# In the United States Court of Federal Claims

No. 18-548C

(E-Filed: October 17, 2018)

| | |
|---|---|
| ALUMINUM SHAPES, LLC, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Contract; Settlement Agreement in <br> )    Civil Enforcement Context; Lack of <br> )    Contract-Based Jurisdiction. |
| THE UNITED STATES, | ) <br> ) |
| Defendant. | ) <br> ) |

Thomas S. Biemer, Philadelphia, PA, for plaintiff. Christie Callahan Comerford, Erik L. Coccia, Margret Spitzer Persico, Philadelphia, PA, and Matthew W. Horn, Chicago, IL, of counsel.

Robert C. Bigler, Trial Attorney, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

CAMPBELL-SMITH, Judge.

    The court has before it defendant's motion to dismiss, ECF No. 7, which is brought pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Plaintiff filed an opposition brief, ECF No. 10, to which the government replied, ECF No. 11. Oral argument was neither requested by the parties nor deemed necessary by the court.

    The only issue before the court is whether a settlement agreement, which arose in the context of a civil enforcement action brought by the Occupational Safety and Health Administration (OSHA) of the United States Department of Labor (DOL), gives rise to contract-based jurisdiction over plaintiff's claims in this court. For the reasons stated below, the settlement agreement between DOL and plaintiff Aluminum Shapes, LLC

(Aluminum Shapes) does not provide this court with jurisdiction over contract-based claims. Accordingly, defendant's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED**.

I.   Background

Aluminum Shapes operates an aluminum extrusion facility in New Jersey. Compl., ECF No. 1 at 2. In 2015, an OSHA inspection of the facility resulted in $308,000 in fines assessed against plaintiff. Id. Plaintiff contested the fines, and the parties negotiated a settlement which was accepted by the Chief Judge of the Occupational Safety and Health Review Commission (Commission). Id. at 3. As part of the settlement agreement, Aluminum Shapes paid $170,000 in fines. Id.

Plaintiff contends that OSHA thereafter violated certain elements of the settlement agreement. Id. at 4. The contract breaches alleged in the complaint include an improper inspection of Aluminum Shapes' facility by OSHA in January 2017, and an improper assessment of fines in the absence of good faith negotiations. Id. at 4-5. New fines were assessed against Aluminum Shapes in the amount of $1,922,895. Id. at 5.

In this suit, Aluminum Shapes alleges one count of breach of contract, and another count of breach of the implied covenant of good faith and fair dealing. Id. at 5-7. Aluminum Shapes seeks damages sustained as a result of the breach of contract, including, apparently, any fines that plaintiff may ultimately pay for the OSHA violations discovered during the January 2017 inspection.[1] See id. at 6 (describing the damages flowing from the breach as including OSHA fines that may be paid by plaintiff, and the costs of defending against the assessment of those fines). The court reserves any further discussion of relevant facts for the analysis section of this opinion.

II.  Tucker Act Jurisdiction

The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (2012). That statute "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) (citations omitted). These include money damages claims against the federal government founded upon the Constitution, an act of Congress, a regulation promulgated by an executive department, any express or implied contract with the United States, or any claim for liquidated or unliquidated damages in cases not sounding in tort. Id. (citing 28 U.S.C. § 1491(a)(1)).

---

[1]   Thus, one goal of plaintiff's suit may be to secure payment from the United States to offset any fines arising from OSHA violations discovered at Aluminum Shapes' facility in January 2017.

Not all contracts, however, give rise to jurisdiction in this court.  See, e.g., Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The government's consent to suit under the Tucker Act does not extend to every contract. (citing Sanders v. United States, 252 F.3d 1329, 1335 (Fed. Cir. 2001); Kania v. United States, 650 F.2d 264, 268 (Ct. Cl. 1981))).  Most relevant here, Kania and Sanders exclude certain types of contracting by the United States in its sovereign capacity from the jurisdictional ambit of the Tucker Act.  See, e.g., Stovall v. United States, 71 Fed. Cl. 696, 698 & n.2 (2006) (discussing contracting in the government's sovereign capacity, and citing to Kania and Sanders, in particular).

The Kania and Sanders line of cases excludes from this court's jurisdiction most claims founded on contracts arising in the "criminal or quasi-criminal" context.  Id. at 701 (citing cases).  For an example of a contract arising from a quasi-criminal matter, this court in Stovall cited Trudeau v. United States, 68 Fed. Cl. 121, 129 (2005), aff'd, 186 F. App'x 998 (Fed. Cir. 2006) (table).  71 Fed. Cl. at 701.  Trudeau is a key decision for the jurisdictional analysis required here.[2]

III.    Standard of Review for Motions Brought under RCFC 12(b)(1)

When reviewing a complaint to determine its jurisdiction over a plaintiff's claims, this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988) (citations omitted).  Plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.  Reynolds, 846 F.2d at 748 (citations omitted).  If jurisdiction is found to be lacking, this court must dismiss the action.  RCFC 12(h)(3).

IV.    Analysis

As a preliminary matter, there is no real dispute that OSHA citations and fines must be contested before the Commission, not in this forum.  ECF No. 10 at 12; ECF No. 11 at 16.  Thus, to the extent that plaintiff's suit could be construed to directly challenge the fines assessed against it by OSHA after the January 2017 inspection, this court has no jurisdiction over such a claim.  See, e.g., Sturm, Ruger & Co. v. Chao, 300 F.3d 867,

---

[2]     As defendant notes in its reply brief, plaintiff studiously avoids any discussion of Trudeau, even though defendant, in its opening brief, contended that Trudeau resolved the jurisdictional question at issue here.  See ECF No. 7 at 14-17; ECF No. 11 at 7-10, 12, 15.  Plaintiff's failure to discuss Trudeau is mystifying, especially in light of the fact that plaintiff extensively relies on Stovall, ECF No. 10 at 14, 16, 18-19, 21, 24, an opinion which presents Trudeau as an example of a contract claim which arose in a quasi-criminal context and thus did not fall within this court's contract-based jurisdiction.

3

873-74 (D.C. Cir. 2002). Indeed, plaintiff acknowledges that its direct challenge to the new citations and fines is currently before the Commission. ECF No. 10 at 8, 12.

Plaintiff insists, however, that it may pursue that challenge before the Commission and simultaneously seek damages for breach of contract in this forum. Id. at 12-13, 23-25. The government suggests that there would be substantial overlap between the two proceedings and that allowing this suit to move forward would "undermine the exclusivity of the Commission's jurisdiction." ECF No. 11 at 18. The court need not resolve this dispute because Kania and its progeny compel a jurisdictional ruling in defendant's favor.

     A.     Kania

The claim in Kania was for money damages flowing from the alleged breach of an agreement between Mr. Kania and a prosecutor, an agreement which was alleged to have traded truthful testimony for freedom from prosecution. 650 F.2d at 266-67. Jurisdiction was lacking, however, for a claim based on Mr. Kania's type of contract. Id. at 267. The jurisdictional analysis in Kania has several elements.

First, the Court of Claims stated this general principle:

> The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can semantically be stated in terms of offer and acceptance or meeting of minds.

Id. at 268. Most contracts giving rise to Tucker Act jurisdiction were distinguishable from Mr. Kania's agreement with the prosecutor, because in those contracts, the "sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves." Id. Thus, a distinction was made in Kania between "proprietary" and "sovereign" contracts, although that distinction may be subject to some dispute. See Stovall, 71 Fed. Cl. at 698 (noting that "Kania distinguishes between contracts relating to proprietary versus sovereign actions," but observing that the distinction was "only loosely mapped").

As for plea agreements, and criminal enforcement proceedings generally, Kania requires a contract claimant to meet a heightened burden:

> [T]he court would look for specific authority in the [Assistant United States Attorney] to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined.

650 F.2d at 268.  Further, criminal courts were seen as the proper forum to police agreements in the context of criminal enforcement proceedings, not our predecessor court, the Court of Claims:

> It would be reasonable to expect that the court which is to police and, in appropriate cases enforce, agreements for plea bargains, or witness protection, or for immunity, will be the courts in which are or will be pending the criminal prosecutions to which the agreements relate.  If this means that money damages for breach are nowhere available, this is the case in any claim area where the Congress has not seen fit to grant its consent to be sued.  It is particularly unreasonable to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive business of conducting criminal trials.

Id. at 268-69 (citing United States v. Jones, 131 U.S. 1 (1889)).  In sum, Kania first discussed the difference between proprietary and sovereign actions, and then noted that there are special requirements, and special concerns, that may limit this court's jurisdiction over contracts in the criminal enforcement setting.

   B. Sanders

  The analytical framework in Sanders is somewhat truncated compared to the analysis in Kania.  In Sanders, the United States Court of Appeals for the Federal Circuit acknowledged that for government contracts in the criminal context, "a damages remedy is not ordinarily available."  252 F.3d at 1334 (citing Kania, 650 F.2d at 268).

  The Federal Circuit then proceeded to examine Mr. Sanders' agreement with a prosecutor to determine whether that agreement fit within the circumstances identified in Kania that permit a suit for money damages to proceed in this court.  Sanders, 252 F.3d at 1335 (citing Kania, 650 F.2d at 268).  Particular emphasis was put on the agreement's terms that might explicitly address monetary damages for breach:

> In other words, a claim for money damages for the alleged breach of such an agreement may not be maintained unless that agreement clearly and unmistakably subjects the government to monetary liability for any breach.

Id.  The Federal Circuit panel concluded with a statement that it was following Kania, and that agreements in the criminal context must contain "an unmistakable promise to subject the United States to monetary liability" to come within the ambit of Tucker Act jurisdiction.  Sanders, 252 F.3d at 1336.  Thus Sanders, like Kania, holds contract claimants in the criminal enforcement context to a heightened standard.  Unless the agreement underlying the claim explicitly addresses government liability for monetary

damages in the event of breach, no jurisdiction for that contract claim will lie in this court.

      C.      Criminal and Quasi-Criminal Contexts Distinguished from Other Contexts

Although the distinction between proprietary versus sovereign actions in Kania may not always guide this court's analysis, see, e.g., Carter v. United States, 102 Fed. Cl. 61, 65-66 (2011) (distinguishing Kania), Kania is binding precedent for this court. Kania continues to be cited by the Federal Circuit for the proposition that not all contracts support jurisdiction in this court. See Rick's Mushroom, 521 F.3d at 1343 (citing Kania, 650 F.2d at 268). In the court's view, Kania and Sanders provide the tools for the jurisdictional analysis required here.

As noted in Stovall, contracts that arise in criminal and quasi-criminal settings are precisely the type of sovereign actions that were addressed in Kania and Sanders. 71 Fed. Cl. at 698-702 & nn.2, 6. In the court's view, it is helpful to distinguish between the jurisdictional analysis in these criminal or civil enforcement cases, and the jurisdictional analysis that is required by cases involving other scenarios. For example, jurisdiction in this court exists for some claims founded on settlement agreements resolving discrimination claims. E.g., Holmes v. United States, 657 F.3d 1303, 1312 (Fed. Cir. 2011); Stovall, 71 Fed. Cl. at 701-02. Tucker Act jurisdiction also is available for claims founded on contracts for certain types of government assistance. See, e.g., San Juan City Coll. v. United States, 391 F.3d 1357, 1360-61 (Fed. Cir. 2004) (citing Sanders, among other authorities, to find jurisdiction over a claim founded on an agreement to receive student financial aid from a federal program); Carter, 102 Fed. Cl. at 65-66 (finding jurisdiction over a claim based on a contract to receive dry milk from a federally-funded assistance program). When this court considers contracts that arise in criminal or civil enforcement proceedings, however, Kania and Sanders compel a jurisdictional analysis that is quite exacting.[3] See, e.g., Phang v. United States, 87 Fed. Cl. 321, 328-30 (2009) (applying Kania and Sanders and finding no jurisdiction over contract claims based on a plea agreement), aff'd, 388 F. App'x 961 (Fed. Cir. 2010); Trudeau, 68 Fed. Cl. at 129-31 (applying Kania and Sanders to a contract claim arising from a settlement agreement in a "civil enforcement action" and finding no jurisdiction).

      D.      Trudeau

---

[3] The contract in question must arise between the criminal suspect/defendant (or the target of the civil enforcement proceeding) and the government. The court does not address here contracts between confidential informants and federal investigators. See SGS-92-X003 v. United States, 85 Fed. Cl. 678, 707-08 (2009) (distinguishing Kania and Sanders, in part because prosecutorial discretion played no part in the confidential informant's contract with federal investigators).

As defendant argues, this court in Trudeau confronted a similar, perfectly analogous situation which resolved the jurisdictional question posed by this suit. ECF No. 7 at 14-17; see also ECF No. 11 at 7-10, 12, 15. Instead of challenging OSHA citations and fines, Mr. Trudeau faced civil enforcement actions brought by the Federal Trade Commission (FTC) to address Mr. Trudeau's allegedly false and misleading infomercials, some of which suggested that Mr. Trudeau's health supplements could cure cancer and other diseases. Trudeau, 68 Fed. Cl. at 124. The parties entered into a settlement agreement which was adopted by the district court in a "Stipulated Order." Id. at 124-25. That order stated that the district court retained jurisdiction over disputes regarding the enforcement of the Stipulated Order; most importantly, the Stipulated Order permanently enjoined Mr. Trudeau from the creation or dissemination of infomercials and obliged him to pay $2 million in "'equitable monetary relief.'" Id. (citation omitted).

The FTC issued a press release summarizing the effects of the Stipulated Order. Id. at 125. Mr. Trudeau unsuccessfully tried to convince the FTC to retract the press release, and sought relief in both a district court (but not in the district court that retained jurisdiction over the Stipulated Order) and in this court. Id. at 125-26. His district court suit sought a rewording of the FTC press release, but was dismissed. Id. at 126.

In this court, Mr. Trudeau sought breach of contract damages. Id. He alleged that the parties' agreement, embodied in the Stipulated Order, was a contract giving rise to Tucker Act jurisdiction. Id. That contract was allegedly breached by the FTC's press release, and Mr. Trudeau's damages included "injuries to his business . . . created [by the] public perception that he is a 'habitual false advertiser.'" Id. at 126 (citation omitted).

The court's jurisdictional analysis excluded any consideration of the district court's retention of jurisdiction over the enforcement of the Stipulated Order. Id. at 131. Instead, the court focused its analysis on the type of contract alleged by Mr. Trudeau, and whether that type of contract gives rise to Tucker Act jurisdiction. Id. at 127-31. In a thorough and painstaking analysis, the court found that Kania and Sanders left no doubt that the agreement ending the civil enforcement actions against Mr. Trudeau was not a contract that supported jurisdiction in this court. Id. at 131.

The court will not reproduce here the exhaustive jurisdictional analysis set forth in Trudeau. The distinction between sovereign and proprietary actions of the United States was discussed at some length, as was the enduring vitality of the holdings in Kania and Sanders.[4] Id. at 127-30. The court observed that criminal enforcement and civil

---

4   This court in Trudeau, 68 Fed. Cl. at 127, did not follow United States v. Zajanckauskas, 346 F. Supp. 2d 251 (D. Mass. 2003), in its application of the precedent of Kania and Sanders. The court finds the jurisdictional analysis in Trudeau to be more persuasive than the one presented in Zajanckauskas, which relied, in

enforcement actions were actions that could only be undertaken by the sovereign. Id. at 129. For the civil enforcement actions against Mr. Trudeau, the court held that the FTC was acting in the government's sovereign capacity. Id. at 129-30. Accordingly, the agreement which settled those consolidated actions was a contract undertaken in the government's "sovereign, not proprietary, capacity." Id. at 130.

The court noted, however, that the precedent in Kania and Sanders contemplates the possibility that even a contract undertaken in the government's sovereign capacity could give rise to Tucker Act jurisdiction. Such a contract, however, must contain an "unmistakable promise to subject the United States to monetary liability in the event of a 'breach' of that [contract]." Id. at 131 (citing Sanders, 252 F.3d at 1336). The Stipulated Order contained no such term.

The court's jurisdictional ruling was summarized as follows:

> Because the Government, through the FTC, was acting in a sovereign capacity when it agreed to entry of the Stipulated Order and because plaintiff has failed to establish that the Stipulated Order contained an unmistakable promise to subject the United States to monetary liability in the event of a "breach" of that Order, see Sanders, 252 F.3d at 1336, this Court lacks subject matter jurisdiction over plaintiff's breach of contract claim.

Trudeau, 68 Fed. Cl. at 131. The court now applies the holdings in Kania, Sanders and Trudeau to the instant case.

### E. No Jurisdiction for Contract Claims Founded on Settlement Agreement Achieved by Parties to Civil Enforcement Action

The contract between Aluminum Shapes and DOL, in the form of a Stipulated Settlement Agreement that was approved by the Commission, arose from a civil enforcement action against Aluminum Shapes. See ECF No. 1 at 1; ECF No. 1-2 at 2-10; ECF No. 1-3 at 2-4; ECF No. 10 at 8; ECF No. 10-1 at 37-46. Pursuant to the precedent of Kania, Sanders and Trudeau, the United States entered into this contract in its sovereign capacity. Thus, jurisdiction will lie for plaintiff's suit only if the Stipulated

---

part, on contract law principles stated in the precedent of another circuit. See Zajanckauskas, 346 F. Supp. 2d at 253, 259 (citing United States v. McLaughlin, 957 F.2d 12, 16 (1st Cir. 1992)). The court notes, too, that the contract in Trudeau arose in a civil enforcement setting, whereas the contract in Zajanckauskas arose, according to the district court, in the immigration context, where citizenship and denaturalization were at issue. 346 F. Supp. 2d at 258-59. In the court's view, Trudeau is the more analogous case and provides more persuasive guidance.

8

Settlement Agreement "clearly and unmistakably subjects the government to monetary liability for any breach."  Sanders, 252 F.3d at 1335.

Defendant argues that the Stipulated Settlement Agreement contains no such language.  ECF No. 7 at 15-17; ECF No. 11 at 14-15.  The court agrees.  Plaintiff misreads relevant precedent and argues that no "unmistakable promise to subject the United States to monetary liability," Sanders, 252 F.3d at 1336, is required.  See ECF No. 10 at 18 ("[I]t is irrelevant that the Settlement Agreement does not expressly authorize monetary damages in the event of breach because the agreement resolved a civil enforcement proceeding and, thus, money damages are presumptively available for breach.").  Plaintiff's position ignores the jurisdictional analysis in Trudeau and is unavailing.

Plaintiff's only analysis of the text of the Stipulated Settlement Agreement, regarding the presence or absence of any unmistakable promise for money damages from the government in the event of breach, is contained in a footnote.  ECF No. 10 at 18 n.5.  Relying on Holmes, plaintiff asserts that the requirement stated in Sanders is met because the Stipulated Settlement Agreement "does not specifically state that money damages are not available for breach."  ECF No. 10 at 18 n.5 (citing Holmes, 657 F.3d at 1315-16).  This argument fails to persuade.

First, Holmes did not address a contract arising in the criminal or civil enforcement context, and is thus distinguishable from this case.  See 657 F.3d at 1311 (noting that the agreements at issue in that case resolved discrimination claims brought by the plaintiff, not enforcement actions brought against the plaintiff).  As the court noted earlier in this opinion, that distinction is fundamental to the correct application of the precedent in Kania and Sanders.  See supra.  Nor does the Holmes opinion focus on the heightened standard particular to criminal or civil enforcement cases; thus, Holmes provides no guidance as to how to identify an "unmistakable promise to subject the United States to monetary liability."  Sanders, 252 F.3d at 1336.

Second, plaintiff's proposed application of Sanders, where an agreement that "does not specifically state that money damages are not available for breach," ECF No. 10 at 18 n.5, "clearly and unmistakably subjects the government to monetary liability for any breach," Sanders, 252 F.3d at 1335, is not credible.  Plaintiff offers no authority for its interpretation of the requirement in Sanders for an unmistakable promise of money damages in the event of breach, and plaintiff's interpretation of Sanders is nonsensical.  See Sanders, 252 F.3d at 1336 (holding that the government's liability for monetary damages in the event of breach "should not be implied").

Because plaintiff's interpretation of the Stipulated Settlement Agreement cannot be reconciled with Kania, Sanders and Trudeau, it must be rejected.  The Stipulated Settlement Agreement does not clearly subject the government to liability for monetary

damages in the event of breach. Lacking such an unmistakable promise, the Stipulated Settlement Agreement cannot support jurisdiction in this court for plaintiff's contract claims.

V.    Conclusion

For the reasons explained in this opinion, plaintiff's contract claims must be dismissed for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Accordingly, defendant's motion to dismiss, ECF No. 7, is **GRANTED**. The clerk's office is directed to **ENTER** final judgment for defendant **DISMISSING** plaintiff's complaint, without prejudice.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge